UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------X
RESAT KELES,

                     Plaintiff,

                -against-

JULIO DAVALOS, Individually and as Chair
of the Department of Civil Engineering,
ANIL AGRAWAL, Individually and as
Professor in the Department of Civil
Engineering, ALISON CONWAY,
Individually and as Professor in the
Department of Civil Engineering, VASIL
DIYAMANDOGLU, Individually and as
Professor in the Department of Civil
Engineering, ROBERT PAASWELL,
Individually and as Professor in the
Department of Civil Engineering, VINCENT
BOUDREAU, Individually and as President
of CITY COLLEGE OF NEW YORK, and
ELIZABETH WITTIG, Individually and as
Professor, Chair and Vice Chair of the
Department of Civil Engineering,

                     Defendants.

**REPORT AND
RECOMMENDATION**
19-CV-3325 (DG) (TAM)

--------------------------------------------------------X

**TARYN A. MERKL**, United States Magistrate Judge:

      Plaintiff Resat Keles ("Plaintiff") initiated this action *pro se* on June 5, 2019,

against Defendants Julio Davalos, Anil Agrawal, Alison Conway, Vasil Diyamandoglu,

Robert Paaswell, Vincent Boudreau, and Elizabeth Wittig (collectively, "Defendants").[1]

(*See* Complaint ("Compl."), ECF No. 1.) Plaintiff, now represented by counsel, alleges

that Defendants discriminated and retaliated against him during his four-semester

---

[1] Plaintiff's original complaint named City College of New York and City University of New York as defendants, however, the amended complaint omits them. (*See generally* Complaint ("Compl."), ECF No. 1; Amended Complaint ("Am. Compl."), ECF No. 42; *cf.* Pl.'s Mem. in Opp'n to Defs.' Mot. ("Pl.'s Mem."), ECF No. 57, at 31.)

tenure as a member of City College of New York's civil engineering department, culminating in Defendants' decision not to reappoint Plaintiff for the fall 2018 academic semester. (*See* Amended Complaint ("Am. Compl."), ECF No. 42, ¶¶ 32, 41–130.)[2] Plaintiff asserts equal protection and due process violations under 42 U.S.C. § 1983 ("§ 1983"), as well as hostile work environment, disparate treatment, and retaliation claims pursuant to the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* (*Id.* ¶¶ 131–68.) In addition, Plaintiff brings a tortious interference with a prospective economic advantage claim under New York common law. (*Id.* ¶¶ 169–76.)

Currently pending before the Court is Defendants' motion to dismiss, which the Honorable Diane Gujarati referred to the undersigned Magistrate Judge for a report and recommendation. (Motion to Dismiss ("Mot."), ECF No. 55; Apr. 26, 2022 ECF Referral Order.) For the reasons set forth below, the Court respectfully recommends that Defendants' motion be granted in part and denied in part.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[3]

Plaintiff is a septuagenarian scholar and professor, and former employee of City University of New York ("CUNY") and City College of New York ("City College"). (Am. Compl., ECF No. 42, ¶¶ 6–7, 27–31.) Plaintiff's tenure at City College began in the fall of 2016, when he was hired by CUNY to teach several courses. (*Id.* ¶ 32.) At the time, Defendant Julio Davalos ("Davalos") was the chair of the civil engineering

---

[2] Plaintiff filed two copies of his amended complaint. (*See* ECF Nos. 41, 42.) The Court cites to ECF No. 42 as the operative complaint in this matter.

[3] The facts alleged by Plaintiff in the operative amended complaint are assumed to be true for purposes of this motion. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110–11 (2d Cir. 2010); *Jackson v. Nassau Cnty.*, 552 F. Supp. 3d 350, 359 n.1 (E.D.N.Y. 2021).

department (the "Department") at City College, as well as the chair of the committee
tasked with deciding whether to reappoint department faculty (the "Executive
Committee"), including Plaintiff. (*Id.* ¶¶ 11–14, 33.) Defendants Anil Agrawal
("Agrawal"), Alison Conway ("Conway"), Vasil Diyamandoglu ("Diyamandoglu"),
and Robert Paaswell ("Paaswell") were all professors in the Department and were also
members of the Executive Committee during the relevant period. (*Id.* ¶¶ 15–18.)
Defendant Vincent Boudreau ("Boudreau") was the president of City College. (*Id.* ¶ 19.)
Defendant Elizabeth Wittig ("Wittig") was a professor and member of the Department's
academic integrity committee (the "Integrity Committee"), who succeeded Davalos as
department chair. (*Id.* ¶¶ 20–21, 33–34.)

## I.    Plaintiff's Hiring and Tenure at City College

As noted above, Plaintiff was hired to work at City College beginning in the fall
of 2016. (*Id.* ¶ 35.) Plaintiff alleges that when he was first hired, Davalos represented
that it "would not be a temporary appointment but long term employment with [City
College]," and that Davalos repeatedly "promised and represented to [Plaintiff] that he
would be continuously reappointed[.]" (*Id.* ¶¶ 36–37.) Plaintiff was indeed reappointed
for the spring 2017, fall 2017, and spring 2018 academic terms. (*Id.* ¶ 41.)

During his roughly eighteen-month employment, Plaintiff claims he was treated
differently than his younger colleagues. Specifically, Plaintiff claims that (1) he had
larger class sizes; (2) he was asked to take on additional responsibilities, such as
"presenting the recitation component" of one of his courses and supervising students'
lab work; and (3) he received less help from teaching assistants with grading exams. (*Id.*
¶¶ 40, 42–61.) Plaintiff further claims that he complained to Davalos about assuming
these additional responsibilities but that Davalos refused to take any action, and that
Plaintiff was not paid his "full salary" for performing said duties. (*Id.* ¶¶ 62–64.)

3

Plaintiff also alleges that beginning in or about January 2018, Davalos "prohibited" Plaintiff, and only Plaintiff, from attending regularly scheduled departmental meetings. (*Id.* ¶¶ 70–72.)

In addition, Plaintiff asserts that he discovered students cheating on coursework during the fall 2017 semester and took steps to document such behavior, even though it was not part of his job, and he was not compensated for doing so. (*Id.* ¶¶ 65–69.) In April 2018, Plaintiff presented his findings to the Integrity Committee, including Wittig and Conway, and the committee reviewed the documentation. (*Id.* ¶¶ 73–76.) According to Plaintiff, the Integrity Committee concluded that cheating had occurred, and, after initially deciding to take action, reversed course "[a]t the behest and urging of Defendant Wittig . . . with the full knowledge and acquiescence of Defendants Davalos and Boudreau." (*Id.* ¶¶ 77–79.) Instead of responding to the students' alleged misconduct, Plaintiff avers that Wittig berated Plaintiff publicly, asserted unsubstantiated allegations about his grading system and availability to meet with students, and harassed him about his use of laser equipment. (*Id.* ¶¶ 80–83.) Plaintiff claims that he continued to voice objections to the Integrity Committee's inaction but that Defendants "refused to address [his] complaints and concerns." (*Id.* ¶¶ 84–86.)

## II.    Plaintiff's Non-Reappointment for the Fall 2018 Term

Plaintiff alleges that on June 19, 2018, the Executive Committee gathered to decide whether to reappoint Plaintiff for the fall 2018 semester. (*Id.* ¶¶ 96, 111.) However, in the weeks leading up to that decision, Plaintiff claims that "Davalos repeatedly told [Plaintiff] that he was too old to teach." (*Id.* ¶ 103; *see also id.* ¶ 112.) In June 2018, Davalos also purportedly told Plaintiff: "you have a history of suing people."

(*Id.* ¶ 108; *see also id.* ¶ 113.)[4] Further, on or about June 19, 2018, the same day that the Executive Committee convened, Davalos allegedly told Plaintiff that he was too old to teach, that he had a history of suing people, and that Defendant Boudreau had emailed Davalos and "directed him to terminate [Plaintiff's] employment." (*Id.* ¶¶ 109–13.)

At the meeting, attended by Executive Committee members Davalos, Agrawal, Conway, Diyamandoglu, and Paaswell, the committee denied Plaintiff's reappointment for the fall 2018 semester. (*Id.* ¶¶ 114–15.) Following that decision, Davalos apparently "stopped by [Plaintiff's] office and again stated that he has a 'history of suing people,'" and that "the undergraduate dean of [City College] told him to fire [Plaintiff]." (*Id.* ¶ 118.) A week later, Plaintiff claims that Diyamandoglu told him that the Executive Committee "did as directed by Davalos and that [Plaintiff] could ask for the committee to reconvene and reconsider its decision." (*Id.* ¶¶ 119–21.) When Plaintiff asked Davalos to reconvene the committee and reconsider its decision, however, Davalos denied Plaintiff's request. (*Id.* ¶¶ 122–23.)

Furthermore, Plaintiff claims that the Department, including Davalos, never conducted any performance reviews of Plaintiff, even though City College and CUNY require such reviews each semester and use them to decide whether to reappoint faculty. (*Id.* ¶¶ 99–102.) Plaintiff also avers that he provided Davalos with teaching records, "including performance reviews from Bronx Community College during

---

[4] Plaintiff alleges that by the spring of 2018, Boudreau, Davalos, and Wittig were aware that Plaintiff had filed an action against LaGuardia Community College ("LaGuardia") in 2015. (*See* Am. Compl., ECF No. 42, ¶¶ 87–95.) Specifically, Plaintiff claims that because LaGuardia, like City College, is part of the CUNY system, and given that Plaintiff was deposed in connection with the LaGuardia lawsuit during the spring 2018 semester in the presence of CUNY's general counsel, CUNY — and consequently, Boudreau, Davalos, and Wittig — "were aware and/or became aware of the LaGuardia Lawsuit," which also raised claims of age discrimination. (*Id.*)

5

[Plaintiff's] tenure there as a faculty member," but that the committee did not consider those documents as part of its decision-making process. (*Id.* ¶¶ 104–07.)

Following his non-reappointment, Plaintiff lodged complaints "to Defendant Davalos, the office of the Provost, the Integrity Committee, and the Student Senate among other entities within [City College]." (*Id.* ¶ 126.) In addition, Plaintiff claims that Defendant Boudreau had "the authority to accept or reject" the Executive Committee's decision not to reappoint Plaintiff. (*Id.* ¶ 127.) However, Plaintiff avers that the "process was corrupted and compromised, as Defendant Boudreau had already decided to 'fire' [Plaintiff]," and therefore, Boudreau "refused to exercise the authority to rescind and reject the [committee's] decision." (*Id.* ¶¶ 128–29.) Plaintiff subsequently filed claims of age discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and filed a notice of claim with New York State. (*Id.* ¶ 130; *see also* ECF Nos. 36-6, 36-7, 36-8.)[5]

---

[5] The parties dispute whether the Court can or should consider Plaintiff's EEOC charge and notice of claim filed with New York State. (*See* Defs.' Mem. in Supp. of Mot. ("Defs.' Mem."), ECF No. 56, at 1–2, *id.* at 2 n.2, 15; Pl.'s Mem., ECF No. 57, at 19; Defs.' Reply in Supp. of Mot. ("Defs.' Reply"), ECF No. 59, at 7–8; Defs.' Mar. 29, 2022 Suppl. Letter ("Defs.' Suppl. Letter"), ECF No. 63, at 4–5; Pl.'s Mar. 29, 2022 Suppl. Letter ("Pl.'s Second Suppl. Letter"), ECF No. 64, at 3–4.) As a general matter, the Court may consider documents Plaintiff incorporates by reference in the pleadings. (*See* Am. Compl., ECF No. 42, ¶ 130.) *See also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). In addition, the Court "may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment." *Falcon v. City Univ. of New York*, 263 F. Supp. 3d 416, 424 (E.D.N.Y. 2017). Although the Court may take notice of these documents, the Second Circuit recently cautioned that "where a court does draw from such extrinsic material, it must construe all reasonable inferences in the non-movant's favor." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305–06 (2d Cir. 2021). Accordingly, the Court does not rest its recommendations below on Defendants' suggested inferences from the contents of these documents at this stage of the proceedings.

### III.    Procedural History

Plaintiff initiated this action *pro se* on June 5, 2019.[6] (*See* Compl., ECF No. 1.) On February 28, 2020, Plaintiff's counsel filed a notice of appearance. (Notice of Appearance, ECF No. 22.) On April 7, 2021, Judge Gujarati granted Plaintiff's motion for leave to file an amended complaint, which Plaintiff filed on May 12, 2021. (Apr. 7, 2021 ECF Order; Am. Compl., ECF No. 42.) Defendants filed their motion to dismiss on August 13, 2021, and Judge Gujarati heard oral argument on Defendants' motion on March 1, 2022. (*See* Mot., ECF No. 55; Defs.' Mem. in Supp. of Mot. ("Defs.' Mem."), ECF No. 56; Pl.'s Mem. in Opp'n to Mot. ("Pl.'s Mem."), ECF No. 57; Pl.'s Suppl. Letter in Opp'n to Mot. ("Pl.'s Suppl. Letter"), ECF No. 58; Defs.' Reply in Supp. of Mot. ("Defs.' Reply"), ECF No. 59; Mar. 1, 2022 Minute Entry, ECF No. 61.) On March 29, 2022, the parties filed supplemental briefing, and Judge Gujarati thereafter referred Defendants' motion to the undersigned Magistrate Judge for a report and recommendation. (Defs.' Mar. 29, 2022 Suppl. Letter ("Defs.' Suppl. Letter"), ECF No. 63; Pl.'s Mar. 29, 2022 Suppl. Letter ("Pl.'s Second Suppl. Letter"), ECF No. 64; Pl.'s Mar. 30, 2022 Letter, ECF No. 66; Apr. 26, 2022, ECF Referral Order.)

As set forth below, the Court respectfully recommends that Defendants' motion to dismiss be denied with respect to certain of Plaintiff's claims and granted as to the rest.

---

[6] The same day, Plaintiff filed a separate age discrimination action in this district against CUNY, Bronx Community College, and its officers. *See* Complaint, *Keles v. Psarelli et al.*, No. 19-CV-3323 (DG) (MMH) (E.D.N.Y. June 5, 2019), ECF No. 1. The Court notes that Plaintiff retained the same counsel in that case, and that there is also a motion to dismiss pending in that matter. *See id.*, ECF Nos. 18, 66. In addition, as mentioned *supra* note 4, Plaintiff has another action pending in this district against a CUNY entity, which appears to be trial-ready. *See* Minute Entry, *Keles v. Yearwood et al.*, No. 15-CV-3880 (NG) (ST) (E.D.N.Y. Feb. 7, 2022), ECF No. 110.

## DISCUSSION

### I.   Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff alleges facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," which requires establishing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556); *see also Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (explaining that courts are "not required to credit conclusory allegations or legal conclusions couched as factual allegations"); *Jackson v. Nassau Cnty.*, 552 F. Supp. 3d 350, 364 (E.D.N.Y. 2021) ("'[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).

At the motion to dismiss stage, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). When deciding a motion to dismiss, the court does not "'weigh the evidence that might be presented at trial but merely . . . determine[s] whether the complaint itself is legally sufficient.'" *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 713 (S.D.N.Y. 2012) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)). In addition, although the scope of review for Rule 12(b)(6) motions is generally limited to the complaint, courts may consider "'documents incorporated in

[the complaint] by reference' and documents which are 'integral to plaintiff['s] claim.'"
*Benny v. City of Long Beach*, No. 20-CV-1908 (KAM), 2021 WL 4340789, at *5 (E.D.N.Y.
Sept. 23, 2021) (alterations in original) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42, 47–48 (2d Cir. 1991)).

## II.   Analysis

Based on the allegations described above, Plaintiff asserts seven causes of action.
Plaintiff's first two causes of action are § 1983 claims against Defendants Davalos,
Boudreau, and Wittig, in their official capacities, for violations of the Equal Protection
Clause and the Due Process Clause of the Fourteenth Amendment. (Am. Compl., ECF
No. 42, ¶¶ 131–44.) Plaintiff's third and fourth causes of action are § 1983 claims against
all seven Defendants, in their individual capacities, for violations of the Equal
Protection Clause and the Due Process Clause of the Fourteenth Amendment. (*Id.*
¶¶ 145–60.) Plaintiff's fifth and sixth causes of action assert age-based disparate
treatment, hostile work environment, and retaliation claims against all seven
Defendants, in their individual capacities, under the NYSHRL and the NYCHRL. (*Id.*
¶¶ 161–68.) Finally, Plaintiff's seventh cause of action is a tortious interference with a
prospective economic advantage claim against Defendants Davalos, Boudreau, and
Wittig, in their individual capacities, under New York common law. (*Id.* ¶¶ 169–76.)

Defendants raise several challenges to the Court's jurisdiction to consider
Plaintiff's claims, as well as to the sufficiency of Plaintiff's factual allegations, and urge
the Court to dismiss Plaintiff's complaint in its entirety, with prejudice. First,
Defendants argue that Plaintiff's § 1983 age discrimination claims are preempted by the
Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (*See* Defs.'
Mem., ECF No. 56, at 8–10; Defs.' Reply, ECF No. 59, at 1–3; Defs.' Suppl. Letter, ECF
No. 63, at 1–3.) Second, Defendants contend that aspects of Plaintiff's claims, as well as

Plaintiff's NYCHRL claim, are barred by sovereign immunity. (*See* Defs.' Mem., ECF No. 56, at 10–11; Defs.' Reply, ECF No. 59, at 3; Defs.' Suppl. Letter, ECF No. 63, at 6–7.) Third, Defendants assert that Plaintiff has failed to sufficiently state a claim for age discrimination, disparate treatment, retaliation, or a hostile work environment under federal or state law. (*See* Defs.' Mem., ECF No. 56, at 11–28; Defs.' Reply, ECF No. 59, at 3–13; Defs.' Suppl. Letter, ECF No. 63, at 3–4.) Fourth, Defendants argue that Plaintiff has not adequately stated a due process claim. (*See* Defs.' Mem., ECF No. 56, at 28–31; Defs.' Reply, ECF No. 59, at 13–17.) And finally, Defendants contend that Plaintiff has failed to state a claim for tortious interference with a prospective economic advantage under New York law.[7] (*See* Defs.' Mem., ECF No. 56, at 31–33; Defs.' Reply, ECF No. 59, at 17–18.)

For the reasons contained herein, the undersigned respectfully recommends that Defendants' motion be denied with respect to (1) Plaintiff's § 1983 retaliation claim under the Equal Protection Clause against Boudreau in his official capacity, but only to the extent Plaintiff is seeking prospective relief; (2) Plaintiff's § 1983 retaliation claim under the Equal Protection Clause against Boudreau and Davalos in their individual capacities, as well as the corresponding NYSHRL and NYCHRL retaliation claims alleging individual liability; (3) Plaintiff's NYSHRL and NYCHRL age-based disparate treatment claims against Davalos in his individual capacity; and (4) Plaintiff's NYCHRL hostile work environment claim against Davalos in his individual capacity. The Court recommends granting Defendants' motion to dismiss as to Plaintiff's remaining claims,

---

[7] Defendants originally argued that the claims against Wittig should be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), but later withdrew that argument after Plaintiff effectuated service. (*See* Defs.' Mem., ECF No. 56, at 33; Executed Summons, ECF No. 53; Defs.' Reply, ECF No. 59, at 1 n.1.)

and to the extent Plaintiff seeks money damages and retrospective relief against Boudreau in his official capacity.

### A. Sovereign Immunity

As an initial matter, Defendants argue that "to the extent they seek money damages and retrospective relief against Defendants in their official capacities," Plaintiff's first two causes of actions against Davalos, Boudreau, and Wittig should be dismissed because they are barred by sovereign immunity. (*See* Defs.' Suppl. Letter, ECF No. 63, at 1; *see also* Def.'s Mem., ECF No. 56, at 10–11.)[8] In response, Plaintiff contends that such arguments are "misplaced" because Plaintiff "does not seek monetary damages from the Defendants in their official capacities." (Pl.'s Mem., ECF No. 57, at 30.)

The Eleventh Amendment "bars suits for damages against states, state agencies and state officials acting in their official capacity, absent the state's consent to suit or an express or statutory waiver of immunity." *Bahr v. City Univ. of New York/York Coll.*, No. 15-CV-4380 (MKB), 2016 WL 8711060, at *4 (E.D.N.Y. Dec. 9, 2016) (citing *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)). As there is no such consent or waiver with respect to § 1983, it is well settled that "[s]uits for monetary relief against state officials in their official capacities are merely *de facto* monetary suits against the state and are barred" by sovereign immunity. *Schwartz v. York Coll.*, No. 06-CV-6754 (RRM) (LB), 2009 WL 3259379, at *3 (E.D.N.Y. Mar. 31, 2009); *see also Islam v. Melisa*, No. 18-CV-2535 (KAM) (LB), 2020 WL 1452463, at *11 (E.D.N.Y. Mar. 24, 2020); *Greenberg v. State Univ. Hosp.-Downstate Med. Ctr.*, No. 15-CV-2343 (PKC) (VMS), 2019 WL 4752018, at *11

---

[8] Defendants' arguments regarding the application of sovereign immunity to Plaintiff's NYCHRL claims are addressed below.

(E.D.N.Y. Sept. 29, 2019), *aff'd*, 838 F. App'x 603 (2d Cir. 2020) (summary order). However, a plaintiff may sue a state official acting in his official capacity for prospective injunctive relief from violations of federal law, under the principle articulated in *Ex parte Young*, 209 U.S. 123, 155–56 (1908). *See, e.g.*, *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007); *Ford v. Reynolds*, 316 F.3d 351, 354–55 (2d Cir. 2003).

Plaintiff's amended complaint in this case requests injunctive relief, including reinstatement. (*See* Am. Compl., ECF No. 42, Prayer for Relief ¶ 2.) "The Second Circuit has held that claims for reinstatement to previous employment fall under the *Ex parte Young* exception," provided that a plaintiff pleads an ongoing violation of federal law and requests prospective relief that defendants have the capacity to grant. *Ighile v. Kingsboro ATC*, No. 16-CV-4294 (AMD) (JO), 2019 WL 267042, at *3 (E.D.N.Y. Jan. 18, 2019) (citing *Rowland*, 494 F.3d at 96; *Dotson v. Griesa*, 398 F.3d 156, 178 (2d Cir. 2005)); *see also Falcon v. City Univ. of New York*, No. 15-CV-3421 (ADS) (ARL), 2016 WL 3920223, at *8–9 (E.D.N.Y. July 15, 2016); *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 244–45 (E.D.N.Y. 2015); *Siani v. State Univ. of New York at Farmingdale*, 7 F. Supp. 3d 304, 317 n.6 (E.D.N.Y. 2014). The "exception to sovereign immunity only authorizes suit against officials with the authority to provide the requested relief," such as the "the authority to reinstate plaintiff and provide the other injunctive relief he seeks." *Siani*, 7 F. Supp. 3d at 317 (citing, *inter alia*, *Schallop v. New York State Dep't of L.*, 20 F. Supp. 2d 384, 391 (N.D.N.Y. 1998)); *see also Sutton v. Stony Brook Univ.*, No. 18-CV-7434 (JS) (ARL), 2020 WL 6532937, at *11 (E.D.N.Y. Nov. 5, 2020). "To state such a claim, a plaintiff need only allege the defendant has responsibility for the alleged conduct and the ability to redress the alleged violations." *Shollenberger v. New York State Unified Ct. Sys.*, No. 18-CV-9736

(VB), 2019 WL 2717211, at *5 (S.D.N.Y. June 28, 2019) (citing *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 99 (2d Cir. 2002)).

Here, the amended complaint alleges ongoing violations and claims that "Defendants Davalos, Boudreau, and Wittig possess the authority to reinstate [Plaintiff] to his former position." (Am. Compl., ECF No. 42, ¶¶ 12–14, 19, 21, 23, 109–110, 127–29, 135–37, 143–44.) However, Plaintiff also alleges that Davalos is no longer chair of the Department, and that it is Boudreau, as City College president, who has "the authority to rescind and reject the decision of the Department's Executive Committee regarding [Plaintiff]'s reappointment." (*Id.* ¶¶ 19, 21, 127, 129.) As to Wittig, Plaintiff alleges that she is the current chair of the Department, coupled with the conclusory allegation that she, together with Boudreau and Davalos, has the power to reinstate him. (*Id.* ¶¶ 20–23.) Thus, Plaintiff's amended complaint includes only conclusory assertions as to Wittig's and Davalos's authority to reinstate him, failing to plausibly allege that they have the power to effect the relief he seeks. Accordingly, the official-capacity claims against individual defendants other than Boudreau should be dismissed. *See Siani*, 7 F. Supp. 3d at 317 (dismissing certain official capacity claims where plaintiff "cast his claims too broadly for *Ex parte Young*").

For these reasons, the Court respectfully recommends finding that sovereign immunity does not serve as a bar to Plaintiff's first two causes of action against Boudreau in his official capacity, but only to the extent that Plaintiff is seeking prospective injunctive relief. *See Greenberg*, 2019 WL 4752018, at *12; *Bahr*, 2016 WL 8711060, at *5; *Soloviev*, 104 F. Supp. 3d at 245; *Siani*, 7 F. Supp. 3d at 317. As discussed *infra*, however, the Court respectfully recommends dismissing Plaintiff's second cause of action, his procedural due process claim, for failure to state a claim.

13

### B.  ADEA Preemption

Defendants argue that Plaintiff's federal age discrimination claims must also be dismissed because the ADEA preempts age discrimination claims brought pursuant to § 1983. (*See* Defs.' Mem., ECF No. 56, at 8–10 (positing, *inter alia*, that "[t]he ADEA's comprehensive remedial scheme demonstrates that Congress intended the ADEA to serve as the exclusive federal remedy for age discrimination in employment"); Defs.' Suppl. Letter, ECF No. 63, at 1–3.) However, as Defendants acknowledge, the Second Circuit has not yet decided this question. (Defs.' Mem., ECF No. 56, at 8.) *See Piccone v. Town of Webster*, 511 F. App'x 63, 63 n.1 (2d Cir. 2013) (summary order); *Butts v. NYC Dep't of Hous. Pres. & Dev.*, 307 F. App'x 596, 598 n.1 (2d Cir. 2009) (summary order); *Kunik v. New York City Dep't of Educ.*, 436 F. Supp. 3d 684, 692 (S.D.N.Y. 2020), *aff'd*, 842 F. App'x 668 (2d Cir. 2021), *as amended* (Jan. 26, 2021), *cert. denied*, 142 S. Ct. 786 (2022), *reh'g denied*, 142 S. Ct. 1403 (2022).

Indeed, courts within this circuit often "permit both claims to proceed simultaneously." *Gittens-Bridges v. City of New York*, No. 19-CV-272 (ER), 2020 WL 3100213, at *11 (S.D.N.Y. June 11, 2020); *see also Magnani v. N. Shore Cent. Sch. Dist.*, No. 16-CV-2519 (FB) (SMG), 2019 WL 4083021, at *4 (E.D.N.Y. Aug. 28, 2019) (finding that plaintiff's § 1983 claim "is not preempted and may proceed, provided that she is seeking to vindicate her constitutional rights"); *Volpi v. Ctr. Moriches Union Free Sch. Dist.*, 9 F. Supp. 3d 255, 257–58 (E.D.N.Y. 2014); *Reed v. Garden City Union Free Sch. Dist.*, 987 F. Supp. 2d 260, 264 (E.D.N.Y. 2013); *Pappas v. New York City Bd. of Educ.*, No. 07-CV-4312 (FB) (MDG), 2011 WL 128509, at *1 (E.D.N.Y. Jan. 14, 2011).

Accordingly, although Defendants' ADEA preemption argument "is not without some force and may yet prevail in the Supreme Court," the Court will analyze the sufficiency of Plaintiff's age discrimination claims under Rule 12(b)(6) to evaluate

whether he has adequately pled causes of action under § 1983. *Shapiro v. New York City Dep't of Educ.*, 561 F. Supp. 2d 413, 420 (S.D.N.Y. 2008); *see also Kunik v. New York City Dep't of Educ.*, No. 15-CV-9512 (VSB), 2017 WL 4358764, at *10 (S.D.N.Y. Sept. 29, 2017).

### C.  Stating a Claim Under Section 1983

Section 1983 provides, in pertinent part, that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . causes . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action . . . ." 42 U.S.C. § 1983; *see also Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). In order to maintain a claim under § 1983, "two essential elements must be present: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015). Given Defendants' roles at a public institution, only the second element is at issue here.

In addition, "[a]n individual may be held liable under . . . [§] 1983 only if that individual is 'personally involved in the alleged deprivation.'" *Littlejohn*, 795 F.3d at 314 (quoting *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)); *see also Raspardo v. Carlone*, 770 F.3d 97, 115 (2d Cir. 2014) ("In order to . . . 'establish individual liability under § 1983, a plaintiff must show . . . that the defendant caused the plaintiff to be deprived of a federal right.'" (quoting *Back*, 365 F.3d at 122)). A plaintiff may establish "personal involvement" by showing that:

> (1) [T]he defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was

grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

*Littlejohn*, 795 F.3d at 314; *see also Sutter v. Dibello*, No. 18-CV-817 (SJF) (AKT), 2021 WL 930459, at *23 (E.D.N.Y. Mar. 10, 2021).

For the reasons discussed herein, the Court finds that Plaintiff has sufficiently alleged a § 1983 claim only against Defendants Boudreau and Davalos, and only for retaliation under the Equal Protection Clause. Accordingly, the Court recommends that Plaintiff's remaining § 1983 claims be dismissed.

### 1. Procedural Due Process

The Court first turns to Plaintiff's allegations, brought under § 1983, that Defendants deprived him of due process, as pled in counts two and four. (*See* Am. Compl., ECF No. 42, ¶¶ 138–44, 153–60; *see also* Pl.'s Mem., ECF No. 57, at 26–28.) Plaintiff argues that Defendants "violated his procedural due process right to be heard" prior to deciding not to reappoint him for the fall 2018 term, and also "violated [Plaintiff]'s protected liberty interest in his reputation" by "accusing him of being too old to teach." (Pl.'s Mem., ECF No. 57, at 26, 28.) These allegations should be dismissed for failure to state a claim.

The Fourteenth Amendment to the United States Constitution states, in part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In examining a procedural due process claim such as this, "'the two threshold questions are[: (1)] whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes[;] and [2] if so, what process was due before the plaintiff could be deprived of that interest.'" *Seitz v. New York State*, No. 18-CV-4149 (PKC) (LB), 2019 WL 4805257, at *21

16

(E.D.N.Y. Sept. 30, 2019) (alterations in original) (quoting *Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 157 (E.D.N.Y. 2018)).

Here, Plaintiff's due process claim fails at the first question because the amended complaint does not plausibly allege a protected liberty or property interest. As to the property interest, Plaintiff alleges that the Executive Committee "is responsible for making decisions whether to reappoint or terminate faculty within the Department, including the reappointment of [Plaintiff]." (Am. Compl., ECF No. 42, ¶ 13.) Plaintiff further avers that after he was hired in 2016, he was reappointed for the next three academic terms.[9] (*Id.* ¶ 41.) However, Plaintiff claims that on June 19, 2018, when the Executive Committee "scheduled and held a meeting . . . to consider and decide whether to reappoint [Plaintiff] for the Fall 2018 term," they voted against reappointment. (*Id.* ¶¶ 111, 118–20.) Notwithstanding Plaintiff's allegations as to the propriety of how or why Defendants made their decision, "an employee whose position requires reappointment has no protectable property interest, absent some additional basis to find one, in h[is] subsequent reappointment." *Croci v. Town of Haverstraw*, 175 F. Supp. 3d 373, 387 (S.D.N.Y. 2016).

Davalos's alleged representations to Plaintiff about "long term employment" and promises that he "would be continuously reappointed to work in the Department," do not overcome the factual allegations in Plaintiff's own pleadings, which demonstrate that the prospect of reappointment was, at bottom, discretionary; nor do they support an inference that Plaintiff had a protected property interest in indefinite reappointment.

---

[9] Plaintiff's allegations on this point in the amended complaint are ambiguous in that they could be interpreted as stating that he was reappointed once for three semesters, or three separate times, i.e., once per semester. (Am. Compl., ECF No. 42, ¶ 41.) Although it appears to be the latter, this distinction is not material to the Court's analysis.

(*See* Am. Compl., ECF No. 42, ¶¶ 35–37, 41, 111, 118–20.) "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Further, "[a]s a general rule, 'there is no constitutionally protected property interest in prospective government employment.'" *Leon v. Rockland Psychiatric Ctr.*, 232 F. Supp. 3d 420, 434 (S.D.N.Y. 2017) (quoting *Abramson v. Pataki*, 278 F.3d 93, 100 (2d Cir. 2002)). The Court notes that "in some circumstances, a written or verbal communication guaranteeing government employment may give rise to a protected property interest." *Id.* (citing *Looney v. Black*, 702 F.3d 701, 708 (2d Cir. 2012)). However, those cases involve plaintiffs "who had been promised something explicitly . . . about *specific* conditions during the future term of their employment," not a generalized promise of indefinite employment. *Looney*, 702 F.3d at 708 (emphasis added). For example, in *Ezekwo v. New York City Health & Hosps. Corp.*, the court found that verbal communications supported a finding of a medical resident's protected property interest in becoming the chief resident. 940 F.2d 775, 783 (2d Cir. 1991). Here, in contrast, Plaintiff does not allege that Davalos specifically promised him a certain term or condition of employment, or that Plaintiff relied on Davalos's representations.

As to Plaintiff's alleged reputational damage, "[a] person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983." *Patterson v. City of Utica*, 370 F.3d 322, 329–30 (2d Cir. 2004). However, "[f]or a government employee, a cause of action under § 1983 for deprivation of a liberty interest without due process of law may arise when an alleged government defamation occurs in the course of dismissal from government employment." *Id.* at 330. This is known as a "stigma-plus" claim. *Id.* To establish a claim

18

under a "stigma-plus" theory, "a plaintiff must show (1) 'the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' and (2) 'a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights.'" *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010) (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)); *see also Velez v. Levy*, 401 F.3d 75, 88 (2d Cir. 2005) ("In a typical 'stigma-plus' case, the stigmatizing statement originates from the same state actor who imposes the 'plus,' such as when a government employer defames an employee in the course of terminating that employee."). Importantly, though, "[t]he charges must be made 'public' by the government employer." *Vega v. Miller*, 273 F.3d 460, 470 (2d Cir. 2001) (citing *Brandt v. Bd. of Coop. Educ. Servs.*, 820 F.2d 41, 43 (2d Cir. 1987)); *see also Al-Kaysey v. L-3 Servs., Inc.*, No. 11-CV-6318 (RRM) (LB), 2013 WL 5447830, at *5 (E.D.N.Y. Sept. 27, 2013) ("The purpose of the public disclosure requirement 'is to limit a constitutional claim to those instances where the stigmatizing charges made in the course of discharge have been or are likely to be disseminated widely enough to damage the discharged employee's standing in the community or foreclose future job opportunities.'" (quoting *Brandt*, 820 F.3d at 44)).

In this case, Plaintiff's amended complaint alleges only that Davalos made derogatory comments directly to Plaintiff and includes no suggestion that Davalos or any other Defendant publicized these comments. (Am. Compl., ECF No. 42, ¶¶ 103, 108, 112–13, 118.) Therefore, Plaintiff has failed to allege a stigma-plus claim. *See Schwartz v. Mayor's Comm. on Judiciary of City of New York*, 816 F.2d 54, 57 (2d Cir. 1987) ("The only stigma in this case is that which may result from [plaintiff]'s failure to be reappointed at the expiration of her term. If this were sufficient to implicate a liberty interest then . . . every government employee terminated without consent would have a due

process liberty interest claim." (quotation marks omitted)); *see also Leon*, 232 F. Supp. 3d at 435 ("Nothing about [defendant]'s decision to withhold an offer prevents Plaintiff from seeking employment with any other employer.").

Accordingly, the Court respectfully recommends that Defendants' motion as to Plaintiff's § 1983 due process claims be granted, and that counts two and four be dismissed.

### 2.   Age Discrimination: Disparate Treatment

Next, the Court turns to Plaintiff's age discrimination claims brought under § 1983, in reliance on the Equal Protection Clause. Count one asserts a claim against Davalos, Boudreau, and Wittig in their official capacities, while count three alleges a claim against all Defendants in their individual capacities.

### a.   *Personal Involvement by Defendants Agrawal, Conway, Diyamandoglu, and Paaswell*

As discussed above, to state a claim for individual liability under § 1983, the complaint must allege sufficient facts to infer that each defendant was personally involved in the alleged constitutional deprivation. Plaintiff's age discrimination allegations against Defendants Agrawal, Conway, Diyamandoglu, and Paaswell fail to plausibly establish their personal involvement.[10] *See generally Littlejohn*, 795 F.3d at 314; *Raspardo*, 770 F.3d at 115. In his amended complaint, Plaintiff alleges that these four Defendants (1) were members of the Executive Committee during the relevant period, and (2) attended the June 19, 2018 meeting when the committee decided not to

---

[10] Contrary to Defendants' contentions otherwise, the Court finds that Plaintiff's allegations as to Boudreau and Wittig do allege personal involvement, at least so far as to warrant additional analysis. (*See* Defs.' Mem., ECF No. 56, at 22–23.) Specifically, Plaintiff claims that (1) Wittig attacked, harassed, and made false accusations as to Plaintiff; and (2) Boudreau directed Davalos to terminate Plaintiff's employment. (Am. Compl., ECF No. 42, at ¶¶ 80–83, 109–10, 127–29.)

reappoint Plaintiff for the fall 2018 semester. (Am. Compl., ECF No. 42, ¶¶ 98, 114–15.) Plaintiff further claims that one week after the committee's decision, Diyamandoglu told Plaintiff that they "did as directed by Davalos and that [Plaintiff] could ask for the committee to reconvene and reconsider its decision." (*Id.* ¶¶ 119–21.) Additionally, Plaintiff mentions that Conway was a member of the Integrity Committee at the time the committee disregarded Plaintiff's findings about student cheating and subsequently "attacked" him. (*Id.* ¶¶ 75, 78–80.)

The amended complaint contains no other factual allegations as to these four Defendants. Notably absent from the pleadings are specific, non-conclusory allegations that any of these Defendants (1) expressed any discriminatory or retaliatory animus toward Plaintiff, (2) were aware of any such animus being directed at Plaintiff, or (3) participated directly in the constitutional violations Plaintiff alleges, apart from merely being on the committees in question and present at the June 19, 2018 Executive Committee meeting. For example, Plaintiff claims the Executive Committee "voted" not to reappoint him for the fall 2018 term, but does not allege whether these Defendants were for or against reappointing Plaintiff. (*Id.* ¶¶ 118–20.) Further, Diyamandoglu's statement that the Executive Committee "did as directed by Davalos" (*id.* at ¶ 121), does not allow "the court to draw the reasonable inference" that *these* Defendants are individually "liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Without additional facts beyond committee membership, Plaintiff's factual allegations do not satisfy the personal involvement requirement necessary to sustain a § 1983 claim.[11] *See*

---

[11] To support his argument that these Defendants were personally involved in the alleged deprivations, Plaintiff cites to *Williams v. Smith*, 781 F.2d 319 (2d Cir. 1986), *Roginsky v. Cnty. of Suffolk, N.Y.*, 729 F. Supp. 2d 561 (E.D.N.Y. 2010), and *Williams v. Toto*, No. 20-CV-4593 (PKC) (VMS), 2021 WL 2351176, at *8 (E.D.N.Y. June 9, 2021). (*See* Pl.'s Mem., ECF No. 57, at 20–21.) However, these cases are inapposite. In *Williams*, the plaintiff, proceeding *pro se*, expressly

*Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012) ("[L]iability for an Equal Protection Clause violation under § 1983 requires personal involvement by a defendant, who must act with discriminatory purpose."); *see also Porter v. Half Hollow Hills Cent. Sch. Dist.*, No. 17-CV-5006 (SJF) (ARL), 2019 WL 4696384, at *8 (E.D.N.Y. Sept. 26, 2019); *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 289 (S.D.N.Y. 2019) (dismissing claim for lack of personal involvement where plaintiff failed to allege individual defendant's involvement in "any . . . conduct that can be construed as discriminatory"). *Cf. Snead v. City of New York*, 463 F. Supp. 3d 386, 398 (S.D.N.Y. 2020) ("An officer's mere presence at the scene of a stop or arrest generally does not constitute sufficient personal involvement for § 1983 liability."), *reconsideration denied*, No. 16-CV-9528 (AJN), 2021 WL 861060 (S.D.N.Y. Mar. 8, 2021).

Accordingly, the Court respectfully recommends that Plaintiff's § 1983 equal protection claims in count three as to Defendants Agrawal, Conway, Diyamandoglu, and Paaswell be dismissed. *See McClenic v. Shmettan*, No. 15-CV-705 (SJF) (SIL), 2015 WL 1930088, at *4 (E.D.N.Y. Apr. 28, 2015) ("A complaint based upon a violation under Section 1983 that does not allege facts establishing the personal involvement of an individual defendant fails as a matter of law.").

---

alleged that the prison superintendent "affirmed [plaintiff's] conviction on administrative appeal," and may have been "directly responsible for the conduct of prison disciplinary hearings." *Williams*, 781 F.2d at 324. In *Roginsky*, the court addressed the sufficiency of plaintiff's ADEA claims, not personal involvement under § 1983, and unlike the four Defendants here, the defendant there was "alleged to have made prior comments about Plaintiff's age such as that Plaintiff 'was getting "old" and that Plaintiff was not going to be around much longer.'" *Roginsky*, 729 F. Supp. 2d at 569. And in *Toto*, the *pro se* plaintiff alleged that the officer himself "illegally stopped, seized and searched and later arrested him." *Toto*, 2021 WL 2351176, at *8 (quotation marks omitted).

b.  *Age Discrimination Claims Against Davalos*

As to Defendant Davalos, Plaintiff brings claims against him both in his official and individual capacities, alleging that he violated the Fourteenth Amendment's Equal Protection Clause by discriminating against Plaintiff "on account of his age."[12] (Am. Compl., ECF No. ¶¶ 131–37, 145–52.)

"The Equal Protection Clause of the Fourteenth Amendment 'is essentially a direction that all persons similarly situated should be treated alike.'" *Barnes v. Ross*, 926 F. Supp. 2d 499, 506 (S.D.N.Y. 2013) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). To state a claim under the Equal Protection Clause, "a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). Generally speaking, though, "[t]o state a claim for [a] violation of the Fourteenth Amendment's Equal Protection Clause, the plaintiff 'must allege that a government actor intentionally discriminated against them on the basis of race, national origin or gender.'" *D.C. by Conley v. Copiague Union Free Sch. Dist.*, No. 16-CV-4546 (SJF) (AYS), 2017 WL 3017189, at *6 (E.D.N.Y. July 11, 2017) (quoting *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999)). "[A]ge is not a suspect classification under the Equal Protection Clause." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83 (2000); *see also Shein v. New York City Dep't of Educ.*, No. 15-CV-4236 (DLC), 2016 WL 676458, at *6 (S.D.N.Y. Feb. 18, 2016).[13]

---

[12] The Court finds that Plaintiff has failed to allege that Boudreau or Wittig took any actions that resulted in disparate treatment on account of Plaintiff's age, either by exhibiting ageist animus or by treating Plaintiff differently than his colleagues. (*See* Am. Compl., ECF No. 42, ¶¶ 69, 79, 80–84, 95, 109–110, 116.)

[13] In his opposition to Defendants' motion, Plaintiff argues that "[a]ge discrimination claims brought pursuant to Section 1983, the ADEA and the NYSHRL are analyzed under the same federal framework." (Pl.'s Mem., ECF No. 57, at 14 n.7 (citing *Sorlucco v. New York City*

Therefore, Plaintiff may only bring an equal protection claim "pursuant to one of two theories: 'class of one,' or selective enforcement." *Leon*, 232 F. Supp. 3d at 431 (quoting *Witt v. Village of Mamaroneck*, 992 F. Supp. 2d 350, 359 (S.D.N.Y. 2014)); *see also Chizman v. Scarnati*, 218 F. Supp. 3d 175, 181 (E.D.N.Y. 2016). Because "a class-of-one claim is not cognizable in the public employment context," the Court analyzes Plaintiff's claim under the standard for selective enforcement. *Leon*, 232 F. Supp. 3d at 431 (citing *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 605–09 (2008); *Appel v. Spiridon*, 531 F.3d 138, 139 (2d Cir. 2008) (per curiam)); *see also Chizman*, 218 F. Supp. 3d at 181. To state a claim under a theory of selective enforcement:

> [A] plaintiff must prove that "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person."

*Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)); *see also Edmond v. Longwood Cent. Sch. Dist.*, No. 16-CV-2871 (RJD), 2019 WL 4889185, at *8 (E.D.N.Y. Sept. 30, 2019); *Picinich v. New York City Dep't of Educ.*, No. 16-CV-844 (CBA) (LB), 2018 WL 3979733, at *5 (E.D.N.Y. July 11, 2018), *report and recommendation adopted sub nom. Picinich v. Antiocho*, No. 16-CV-844

---

*Police Dep't*, 888 F.2d 4, 7 (2d Cir. 1989); *Fagan v. U.S. Carpet Installation, Inc.*, 770 F. Supp. 2d 490, 495 (E.D.N.Y. 2011)).) But *Sorlucco* did not address age discrimination claims and *Fagan* did not address § 1983 claims. The Court acknowledges that some courts do examine § 1983 age-based equal protection claims, particularly at the summary judgment phase and in conjunction with parallel discrimination claims or ADEA claims, under the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g., Kunik*, 436 F. Supp. 3d at 692–93; *Worrell v. New York City Dep't of Educ.*, 140 F. Supp. 3d 231, 237 (E.D.N.Y. 2015); *Anand v. New York State Dep't of Tax'n & Fin.*, No. 10-CV-5142 (SJF) (WDW), 2014 WL 810873, at *2 (E.D.N.Y. Feb. 28, 2014); *Burkhardt v. Lindsay*, 811 F. Supp. 2d 632, 651 (E.D.N.Y. 2011). However, given that Plaintiff is not alleging age discrimination under the ADEA, and in light of Plaintiff's argument that his § 1983 age discrimination claims "are based on Defendants' distinct violation of his Equal Protection rights," the Court analyzes Plaintiff's allegations under the relevant Equal Protection Clause jurisprudence. (Pl.'s Mem., ECF No. 57, at 10.)

(CBA) (LB), 2018 WL 3973006 (E.D.N.Y. Aug. 20, 2018). Many courts have observed that these types of selective enforcement claims occupy a "murky corner of equal protection law," with few guiding cases on point. *See, e.g.*, *Hu*, 927 F.3d at 91; *Airday v. City of New York*, No. 14-CV-8065 (VEC), 2020 WL 4015770, at *3 (S.D.N.Y. July 16, 2020).

In addition, there is some "disagreement within the Second Circuit regarding the degree of similarity that a plaintiff must show in order to adequately allege an equal protection claim under the selective enforcement theory." *Wilson v. New York*, No. 15-CV-23 (CBA) (VMS), 2017 WL 9674497, at *22 (E.D.N.Y. Jan. 24, 2017) (quotation marks and citation omitted), *report and recommendation adopted*, No. 15-CV-23 (CBA) (VMS), 2018 WL 1466770 (E.D.N.Y. Mar. 26, 2018). Some courts apply the more stringent "class-of-one" standard, which requires a showing that: (1) "'no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy,'" and (2) "'the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.'" *Id.* (quoting *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011)). Other courts apply a less stringent standard, requiring that a plaintiff "show that the comparators are similarly situated in all material respects." *Id.* (quotation marks and citation omitted). Additionally, in this context, a "plaintiff cannot merely rest on 'a demonstration of different treatment from persons similarly situated,'" but rather "must 'prove that the disparate treatment was *caused by* the impermissible motivation.'" *Hu*, 927 F.3d at 91 (quoting *Bizzarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005)); *see also Duguid v. State Univ. of New York at Albany*, No. 17-CV-1092 (TJM) (DJS), 2021 WL 2805637, at *12 (N.D.N.Y. July 6, 2021); *Airday*, 2020 WL 4015770, at *5.

Here, Plaintiff suggests that Davalos took the following actions because of Plaintiff's age: (1) permitted Plaintiff's class sizes to be more than 80 students, as opposed to the normal 30 to 40 student limit; (2) assigned Plaintiff "the added responsibility of presenting the recitation component" for a course; (3) made Plaintiff supervise his students' laboratory work "and the laboratory work of students enrolled in another adjunct faculty's section," without additional compensation; (4) assigned Plaintiff the added responsibility of grading examinations; (5) told Plaintiff that he was "too old" to teach; and (6) elected not to reappoint Plaintiff for the fall 2018 term. (Am. Compl., ECF No. 42, ¶¶ 51–61, 103, 112, 124.) For the reasons stated herein, Plaintiff fails to make out an equal protection claim under the selective enforcement theory.

First, Plaintiff does not allege that any similarly situated colleague, much less a younger colleague, was reappointed for the fall 2018 semester. Plaintiff thus fails to show how he was selectively treated compared with others similarly situated with respect to his non-reappointment. Second, Plaintiff's allegations seeking to establish that he was treated differently than younger individuals in the Department are likewise insufficient. Plaintiff primarily alleges, in sum and substance, that four younger employees in the Department — Michael Ghoshen, Hasan Pekoz, Ardawan,[14] and Fen Boa Ling — were not asked to take on the same added responsibilities, such as larger class sizes and exam grading. (*Id.* ¶¶ 45, 47–48, 53–54, 56–57, 61.) Plaintiff does not specify, however, whether these professors were tenured or employed on a semester-by-semester basis like Plaintiff, how long they had been part of the Department, or

---

[14] Plaintiff refers to this colleague only as "Ardawan." (Am. Compl., ECF No. 42, ¶¶ 47–48, 53–54, 57, 61.)

whether they were subject to the same employment standards.[15] *See Picinich*, 2018 WL 3979733, at *6 ("The fact that plaintiff and [his alleged comparator] were both Latin teachers at the same high school does not make them similarly situated within the meaning of an equal protection claim."); *see also Leon*, 232 F. Supp. 3d at 433. The Court is mindful that the question of "whether parties are similarly situated is generally a fact-intensive inquiry that depends heavily on the particular context of the case at hand," and because of this, the Second Circuit has "cautioned against deciding whether two comparators are similarly situated on a motion to dismiss." *Hu*, 927 F.3d at 97 (alterations and quotation marks omitted); *see also id.* at 96 ("'[T]he plaintiff's and comparator's circumstances must bear a reasonably close resemblance.'" (quoting *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014))).

Even assuming *arguendo* that Plaintiff was similarly situated to these colleagues in all material respects, Plaintiff's claim is fatally flawed because the amended complaint is devoid of non-conclusory factual allegations that would allow the Court to infer that Davalos increased Plaintiff's responsibilities *on account of* Plaintiff's age or for other impermissible motivations such as malice or ill will. *See, e.g.*, *Lilakos v. New York City*, 808 F. App'x 4, 8 (2d Cir. 2020) (summary order) (finding that "Plaintiffs' allegations of differential treatment, standing alone," failed to "show malice"); *Marom v. Town of Greenburgh*, No. 18-CV-7637 (JCM), 2020 WL 4891339, at *7 (S.D.N.Y. Aug. 19,

---

[15] Plaintiff cites to several cases in opposition to Defendants' argument here, most of which do not address the Equal Protection Clause. (*See* Pl.'s Mem., ECF No. 57, at 23.) Plaintiff is correct that the court in *Kunik* found that, at the motion to dismiss stage, it was sufficient for the plaintiff to identify "her comparators in the ESL Department by name, and . . . allege[] upon information and belief that they are younger." *Kunik v. New York City Dep't of Educ.*, No. 15-CV-9512 (VSB), 2017 WL 4358764, at *10 (S.D.N.Y. Sept. 29, 2017). However, in *Kunik*, the amended complaint contained more detailed factual allegations about plaintiff's comparators, and specifically, their relative seniority. *See* Amended Complaint ¶ 46, *Kunik v. New York City Dep't of Educ.*, No. 15-CV-9512 (VSB) (S.D.N.Y. Sept. 12, 2016), ECF No. 23.

2020) (dismissing plaintiff's equal protection claim where he "d[id] not assert sufficient detail to plausibly plead any discriminatory motive for the [defendants'] actions").

Accordingly, the Court recommends granting Defendants' motion as to this claim, because Plaintiff has failed to plausibly plead an equal protection violation under a theory of selective enforcement.

### 3. Hostile Work Environment

Plaintiff also alleges that Davalos and Wittig created a hostile work environment.[16] To establish a hostile work environment claim under § 1983, "a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). This standard contains both objective and subjective components. First, "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive," and second, "the victim must subjectively perceive the work environment to be abusive." *Raspardo*, 770 F.3d at 114.

Importantly, "'[t]he incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Littlejohn*, 795 F.3d at 321 (quoting *Raspardo*, 770 F.3d at 114). To determine whether a work environment is sufficiently severe or pervasive, courts "must consider the totality

---

[16] Although Plaintiff names Boudreau in his § 1983 hostile work environment claims, the only potentially relevant allegations as to Boudreau are that he (1) was "aware of the work that [Plaintiff] undertook regarding the students cheating," and (2) acquiesced to the Integrity Committee's failure to act in response to said cheating. (Am. Compl., ECF No. 42, ¶¶ 69, 79, 133, 147.) As explained herein, these do not establish a § 1983 hostile work environment claim. Moreover, Plaintiff appears to have abandoned any such claim as to Boudreau. (*See* Pl.'s Mem., ECF No. 57, at 24–25 (omitting Boudreau from Plaintiff's opposition to Defendants' hostile work environment arguments).)

of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Boonmalert v. City of New York*, 721 F. App'x 29, 33 (2d Cir. 2018) (summary order). "To be actionable under the Equal Protection Clause, moreover, a plaintiff must show that the abusive conduct occurred because of h[is] membership in a protected class." *Kunik v. New York City Dep't of Educ.*, 842 F. App'x 668, 671 (2d Cir. 2021) (summary order), *as amended* (Jan. 26, 2021); *see also Sutter*, 2021 WL 930459, at *27.

Plaintiff has not adequately pled a hostile work environment claim under § 1983. Plaintiff's primary allegations that could support a claim of hostile work environment are: (1) Davalos's "too old to teach" comments (Am. Compl., ECF No. 42, ¶ 103, 112); (2) Davalos telling Plaintiff on at least two occasions that Plaintiff has a "history of suing people" (*id.* ¶¶ 108, 113); (3) Davalos assigning Plaintiff an increased workload (*id.* ¶¶ 51–63); (4) Davalos prohibiting Plaintiff from attending departmental meetings (*id.* ¶¶ 70–72); (5) Wittig refusing to act in response to Plaintiff's documentation of cheating (*id.* ¶¶ 65–69, 73–79, 85); and (6) Wittig "attack[ing]" Plaintiff, "asserting false and unsubstantiated allegations" about Plaintiff, falsely accusing Plaintiff of "taking time off" instead of being available to meet with students, "berat[ing] him publicly in front of his students and colleagues," and further "harass[ing]" Plaintiff regarding his use of laser equipment (*id.* ¶¶ 80–84).

As an initial matter, the Court finds Davalos's purported comments to Plaintiff about his age and litigiousness to be episodic in nature. Plaintiff alleges that Davalos made remarks on the day of Plaintiff's non-reappointment and seemingly two other times in the preceding weeks, over the course of the four semesters Plaintiff worked in the Department. (*See id.* ¶¶ 103, 108, 112–13). This does not satisfy the objectively

29

"severe or pervasive" prong necessary to sustain a hostile work environment claim. *See De Figueroa v. New York*, 403 F. Supp. 3d 133, 160–61 (E.D.N.Y. 2019) ("Isolated incidents or 'episodic' stray remarks are not 'sufficiently continuous and concerted in order to be deemed pervasive.'" (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003))); *see also Almontaser v. New York City Dep't of Educ.*, No. 13-CV-5621 (ILG) (VMS), 2014 WL 3110019, at *8 (E.D.N.Y. July 8, 2014).

Further, without more, Davalos's assigning Plaintiff an increased workload and banning Plaintiff from the Department's meetings are insufficient to establish a hostile work environment. *See Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (summary order) (finding that being "wrongly excluded . . . from meetings, excessively criticized . . . arbitrarily imposed duties outside of [one's] responsibilities," do not "support a finding of a hostile work environment that is pervasive or severe"); *MacAlister v. Millenium Hotels & Resorts*, No. 17-CV-6189 (ER), 2018 WL 5886440, at *7 (S.D.N.Y. Nov. 8, 2018) (same); *see also Orellana v. Farmingdale Sch. Dist.*, No. 20-CV-6050 (JMA) (ST), 2022 WL 976811, at *5 (E.D.N.Y. Mar. 4, 2022), *report and recommendation adopted*, No. 20-CV-6050 (JMA) (ST), 2022 WL 970808 (E.D.N.Y. Mar. 31, 2022); *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 213 (E.D.N.Y. 2014); *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 255 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013). Moreover, as discussed above in the context of the age discrimination claims, Plaintiff does not adequately allege facts from which to infer that Davalos undertook these actions *because of* an improper animus against Plaintiff, as is required to maintain his hostile work environment claim under the Equal Protection Clause. Notably, Davalos is alleged to have taken these actions well before he purportedly made any comments to Plaintiff regarding his age or litigation history. *See, e.g., Kunik*, 842 F. App'x at 671; *see also Briante v. Longwood Cent. Sch. Dist.*, No. 15-CV-3200 (DRH) (GRB),

2016 WL 1056569, at *4 (E.D.N.Y. Mar. 16, 2016) ("[T]he hostile work environment claim is properly dismissed because plaintiff has failed to allege sufficient facts to support that the conduct giving rise to the alleged hostile work environment occurred because of [her] membership in a protected class." (alteration in original) (quotation marks omitted)).

As for Wittig's conduct toward Plaintiff and the Integrity Committee's refusal to take action against cheating students, Plaintiff's allegations fail for similar reasons. Even if letting students off the hook for cheating could constitute a hostile work environment as to Plaintiff, he does not provide non-conclusory allegations suggesting that the complained-of conduct consisted of more than isolated events. *See Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) ("[I]solated acts, unless very serious, do not meet the threshold of severity or pervasiveness."); *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 62 (2d Cir. 1992) ("The incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief."). Rather, Plaintiff's allegations, especially as to Wittig's behavior, are generalized and conclusory. (*See* Am. Compl., ECF No. 42, ¶¶ 79–86.)

Accordingly, the Court recommends dismissing Plaintiff's § 1983 hostile work environment claims.

### 4.  Retaliation

The final aspect of Plaintiff's § 1983 equal protection claim is the allegation that Davalos, Boudreau, and Wittig retaliated against Plaintiff for bringing the LaGuardia lawsuit. (*See* Am. Compl., ECF No. 42, ¶¶ 124–25, 131–37, 145–52; *see also* Pl.'s Mem., ECF No. 57, at 25–26.)[17] As noted above, Plaintiff has styled this retaliation claim as an

---

[17] To the extent Plaintiff argues that Wittig's "convincing the Integrity Committee to

Equal Protection Clause violation against Defendants in their official and individual capacities. (*See* Am. Compl., ECF No. 42, ¶¶ 132, 134, 146, 148.) For the reasons previously stated, Plaintiff's official capacity claim as to Boudreau may proceed to the extent Plaintiff seeks prospective relief. *Siani*, 7 F. Supp. 3d at 317. Defendants separately argue, however, that they are immune from Plaintiff's individual-capacity retaliation claim under the doctrine of qualified immunity. (*See* Defs.' Suppl. Letter, ECF No. 63, at 7; Defs.' July 29, 2022 Suppl. Letter, ECF No. 69.) Accordingly, the Court will briefly address whether Defendants are so immune.[18]

    a.  *Qualified Immunity*

"[O]fficials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "'The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Government officials who are 'performing discretionary functions generally are shielded from liability for civil

---

refrain from punishing the cheating students" constitutes retaliation, the Court has addressed such arguments in the context of Plaintiff's hostile work environment claim. (Pl.'s Mem., ECF No. 57, at 25.) Further, Plaintiff does not allege that by bringing the students' cheating to the attention of the Integrity Committee and Wittig, that he was complaining about "discriminatory treatment." (Am. Compl., ECF No. 42, ¶¶ 65–69, 74–86.) *See Batiste v. City Univ. of New York*, No. 16-CV-3358 (VEC), 2017 WL 2912525, at *10 (S.D.N.Y. July 7, 2017) ("Complaining about general unfairness, unaccompanied by any indication that plaintiff's protected class status caused the unfairness, does not qualify as protected activity."); *see also Kunik*, 2017 WL 4358764, at *8 (noting that § 1983 equal protection retaliation claims require a plaintiff "to allege that she complained of or otherwise opposed discrimination" (quotation marks omitted)).

    [18] On July 26, 2022, the Court requested supplemental letter briefs on this issue. (*See* July 26, 2022 ECF Order; Pl.'s July 29, 2022 Suppl. Letter, ECF No. 68; Defs.' July 29, 2022 Suppl. Letter, ECF No. 69.)

damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Looney*, 702 F.3d at 705–06 (quoting *Harlow*, 457 U.S. at 818). Meaning, "[p]ublic officials are entitled to qualified immunity 'unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" *Liberian Cmty. Ass'n of Connecticut v. Lamont*, 970 F.3d 174, 186 (2d Cir. 2020) (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018)). The Supreme Court has "'stressed the importance of resolving immunity questions at the earliest possible stage [of the] litigation.'" *Id.* (quoting *Wood v. Moss*, 572 U.S. 744, 755 n.4 (2014)). However, "[d]efendants bear the burden of establishing qualified immunity," and a "defendant asserting a qualified immunity defense on a motion to dismiss faces a formidable hurdle and is usually not successful." *Penz v. Fields*, No. 21-CV-005 (VB), 2021 WL 5507249, at *6 (S.D.N.Y. Nov. 23, 2021) (quotation marks and citations omitted).

As Defendants point out in their supplemental letter (*see* Defs.' July 29, 2022 Suppl. Letter, ECF No. 69), in 2014, the Honorable Joseph F. Bianco found that "[n]either the Supreme Court nor the Second Circuit has held specifically that retaliation for age discrimination litigation may be the subject of an equal protection claim," and therefore barred plaintiff's individual-capacity § 1983 retaliation claims under the doctrine of qualified immunity. *Siani*, 7 F. Supp. 3d at 318–19 (noting that the circuit had "questioned whether retaliation for discrimination complaints is cognizable as an equal protection violation, as opposed to a First Amendment theory," and comparing *Bernheim v. Litt*, 79 F.3d 318 (2d Cir. 1996) with *Hicks v. Baines*, 593 F.3d 159 (2d Cir. 2010)); *see also Corrado v. New York State Unified Ct. Sys.*, No. 12-CV-1748 (DLI) (MDG), 2014 WL 4626234, at *9 n.4 (E.D.N.Y. Sept. 15, 2014) (same). *But see Giscombe v.*

*New York City Dep't of Educ.*, 39 F. Supp. 3d 396, 405–06 (S.D.N.Y. 2014) (allowing § 1983 retaliation claim under the Equal Protection Clause to proceed).

In 2015, however, the Second Circuit decided *Vega*, a case involving § 1983 claims of discrimination on the basis of race and age, and observed that "the elements of a retaliation claim based on an equal protection violation under § 1983 mirror those under Title VII." *Vega*, 801 F.3d at 91. Part of the circuit's rationale in *Vega* was to clear up the "considerable confusion surrounding the viability of retaliation claims under § 1983." *Id.* at 80–81. Even still, the post-*Vega* caselaw addressing standalone age-based retaliation claims under the Equal Protection Clause is scant. *See, e.g.*, *Fierro v. City of New York*, No. 20-CV-9966 (GHW), 2022 WL 428264, at *7–8 (S.D.N.Y. Feb. 10, 2022). Many courts have found, however, that for purposes of qualified immunity, "the right to be free from retaliation under the Equal Protection Clause" became clearly established in "September 2015 when the Second Circuit decided *Vega*." *Muller v. City of New York*, No. 13-CV-4689 (NG) (RML), 2020 WL 3985094, at *1 (E.D.N.Y. July 10, 2020); *see also, e.g.*, *Oliver v. New York State Police*, No. 15-CV-444 (BKS) (DJS), 2020 WL 1989180, at *48 (N.D.N.Y. Apr. 27, 2020); *Anderson v. City of New York, Health & Hosp. Corp.*, No. 16-CV-1051 (GBD) (KHP), 2017 WL 9538862, at *16 (S.D.N.Y. Jan. 19, 2017), *report and recommendation adopted*, No. 16-CV-1051 (GBD) (KHP), 2017 WL 3251603 (S.D.N.Y. July 31, 2017). *Cf. Liberian Cmty. Ass'n of Connecticut*, 970 F.3d at 186 ("To be sure, 'a case directly on point' is not required 'for a right to be clearly established.'" (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam))).

In light of this precedent, and notwithstanding the murkiness surrounding the doctrinal underpinnings of standalone retaliation claims under the Equal Protection Clause based on prior age discrimination claims, the Court finds that Defendants have not met their burden to establish qualified immunity at this stage of the litigation.

34

Therefore, Plaintiff's individual liability claims should be permitted to proceed. *See Horn v. Stephenson*, 11 F.4th 163, 169–70 (2d Cir. 2021) ("[T]he [qualified immunity] defense 'faces a formidable hurdle' at the pleading stage." (quoting *McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004))); *Chamberlain v. City of White Plains*, 960 F.3d 100, 110–11 (2d Cir. 2020) (observing, *inter alia*, that "[t]he immunity question cannot be resolved . . . prior to ascertainment of the truth of the plausible factual allegations on which a finding of qualified immunity is premised"). However, this recommendation is made "without prejudice to renewal, if warranted, upon a motion for summary judgment." *Sutter*, 2021 WL 930459, at *35.

### b. *Retaliation Claims Against Boudreau, Davalos, and Wittig*

For a retaliation claim under § 1983 to survive a motion to dismiss, "the plaintiff must plausibly allege that: (1) defendants acted under the color of state law, (2) defendants took adverse employment action against him, (3) because he complained of or otherwise opposed discrimination." *Vega*, 801 F.3d at 91; *see also Gonzalez*, 377 F. Supp. 3d at 290 ("To establish a *prima facie* case of unlawful retaliation under § 1983, 'an employee must show that (1) he was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action.'" (alteration omitted) (quoting *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014))).

Notably, "for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action. It is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision." *Vega*, 801 F.3d at 90–91 (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). In addition, "[t]o plead

retaliation, a plaintiff must plausibly plead a connection between the adverse action and her protected activity." *Xanthakos v. City Univ. of New York*, No. 17-CV-9829 (VEC), 2020 WL 5026930, at *7 (S.D.N.Y. Aug. 24, 2020). "This causal connection may be established 'indirectly,' that is, 'by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct.'" *Penz*, 2021 WL 5507249, at *5 (quoting *Littlejohn*, 795 F.3d at 319).

In this case, Plaintiff alleges that Davalos, Boudreau, and Wittig "were aware and/or became aware" of the LaGuardia lawsuit in or about the spring of 2018, and that Davalos told Plaintiff that he has a "history of suing people" in June 2018, including on the day that the Executive Committee decided not to reappoint Plaintiff. (Am. Compl., ECF No. 42, ¶¶ 95, 108, 113, 118.) In addition, Plaintiff alleges that Davalos told Plaintiff on June 19, 2018, that Boudreau "wrote and sent [Davalos] an email, directing that Davalos fire [Plaintiff]," and that "Davalos also stated that the undergraduate dean of [City College] told him to fire [Plaintiff]." (*Id.* ¶¶ 109–10, 118.)

As an initial matter, Plaintiff's claims against Wittig in her individual capacity fail because Plaintiff does not adequately allege that Wittig was personally involved in the non-reappointment decision, for the same reasons discussed *supra* with respect to Agrawal, Conway, Diyamandoglu, and Paaswell. With respect to Boudreau and Davalos, on the other hand, Defendants do not appear to dispute that Plaintiff's filing an age discrimination lawsuit against LaGuardia qualifies as protected activity, that Plaintiff's non-reappointment constitutes an adverse employment action, or that Defendants acted under color of state law when deciding not to reappoint Plaintiff. (*See* Defs.' Mem., ECF No. 56, at 19–22; Pl.'s Mem., ECF No. 57, at 25–26; Defs.' Reply, ECF No. 58, at 8–9, 12.) *See also Fierro*, 2022 WL 428264, at *7–8; *Ahmad v. White Plains City*

*Sch. Dist.*, No. 18-CV-3416 (KMK), 2020 WL 5720753, at *8 (S.D.N.Y. Sept. 24, 2020); *cf. Boncoeur v. Haverstraw-Stony Point Cent. Sch. Dist.*, No. 20-CV-10923 (KMK), 2022 WL 845770, at *8–9 (S.D.N.Y. Mar. 22, 2022). Rather, the parties disagree about whether Plaintiff has sufficiently alleged causation; meaning, that Boudreau and Davalos knew that Plaintiff's LaGuardia lawsuit raised age discrimination claims, and that the lawsuit was a "but-for" cause of Plaintiff's non-reappointment. Defendants further argue that because Boudreau "directed Davalos to not reappoint Plaintiff," in the absence of facts alleging Boudreau's discriminatory or retaliatory animus, any improper motive by Davalos was superseded by Boudreau's intervening directive. (Defs.' Mem., ECF No. 56, at 21–22 (citing Am. Compl., ECF No. 42, ¶¶ 109–10, 128).)

Plaintiff's allegations supporting an inference that Boudreau and Davalos knew about the LaGuardia lawsuit and that it was an age discrimination action are admittedly thin. (*See* Am. Compl., ECF No. 42, ¶¶ 87–95; *see also supra* note 4.) However, accepting all factual allegations as true and drawing all inferences in Plaintiff's favor — as the Court must at this stage — the Court finds that Plaintiff has alleged facts from which to plausibly infer that Boudreau and Davalos were aware of Plaintiff's protected activity, i.e., that Plaintiff raised claims of age discrimination in the LaGuardia lawsuit. (Am. Compl., ECF No. 42, ¶¶ 90–95.) In other words, given the timing of Plaintiff's deposition in the LaGuardia lawsuit and the determination not to reappoint him, it is reasonable to infer at this stage that, as relatively high-ranking City College officials, Davalos and Boudreau learned about Plaintiff's pending age discrimination litigation against another CUNY entity.[19] Further, the amended complaint's allegations as to

---

[19] Of course, whether Boudreau and Davalos in fact knew of the nature of the LaGuardia lawsuit (or about it at all) is a factual dispute that can be resolved at a later stage in the litigation.

Boudreau and Davalos's comments and actions in close proximity to when Plaintiff was deposed in the LaGuardia lawsuit are, at this preliminary stage, sufficient to infer that their animus based on Plaintiff's lawsuit was a but-for cause of Plaintiff's non-reappointment. *See Fierro*, 2022 WL 428264, at *10 (S.D.N.Y. Feb. 10, 2022) (concluding that "regardless of the length of time between Plaintiff's lawsuit alleging age . . . discrimination and the denial of promotions in 2018 and 2019, the interviewer's reference to Plaintiff's 'history at District 75,' could refer to the lawsuits alleging age . . . discrimination that he filed while working at District 75. That reference is sufficient to plead direct animus").

Specifically, Plaintiff alleges (1) that Boudreau and Davalos became aware of his protected activity in the "Spring of 2018," (2) that on June 19, 2018, the day of the Executive Committee meeting at which the committee voted not to reappoint Plaintiff, Davalos expressly told Plaintiff that he was "too old to teach" and that he has "a history of suing people," and (3) the same day, Davalos told Plaintiff that Boudreau directed Davalos to end Plaintiff's employment. (Am. Compl., ECF No. 42, ¶¶ 94–95, 108–10, 112, 113, 116, 118, 128.) As to Davalos, the comments about Plaintiff's litigiousness are sufficient to establish a causal connection with the adverse employment action of non-reappointment because they evidence retaliatory animus. *See Fierro*, 2022 WL 428264, at *10 ("'A plaintiff may establish causation either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action.'" (alteration and emphasis omitted) (quoting *Smith v. Cnty. of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015))).

With respect to Boudreau, Plaintiff alleges that he was personally involved in the non-reappointment decision by directing Davalos to terminate Plaintiff's employment, but does not provide similar allegations of direct retaliatory animus. (*See* Am. Compl.,

ECF No. 42, ¶¶ 109–10, 116, 127–29.) Rather, drawing all inferences in Plaintiff's favor, the amended complaint states that Boudreau took such actions soon after learning of the LaGuardia lawsuit. (*See id.* ¶¶ 95, 109–10; Pl.'s Mem., ECF No. 57, at 25–26.) "[C]ases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). "This inquiry is not subject to a 'bright line' test, and the Court must 'exercise its judgment about the particular inferences that can be drawn from temporal proximity in the context of particular cases.'" *Buchanan v. City of New York*, 556 F. Supp. 3d 346, 368 (S.D.N.Y. 2021) (quoting *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)); *see also Bidot v. Cnty. of Suffolk*, No. 19-CV-3925 (SJF) (ARL), 2020 WL 6385072, at *7 (E.D.N.Y. Aug. 20, 2020) ("Under both federal and state case law, where no additional facts are pled, temporal proximity ordinarily requires that the allegedly retaliatory act occur within two months of the plaintiff's protected activity."), *report and recommendation adopted*, No. 19-CV-3925 (SJF) (ARL), 2020 WL 5747197 (E.D.N.Y. Sept. 25, 2020).

Crediting Plaintiff's allegation that Boudreau learned of the age discrimination in the LaGuardia lawsuit in the spring of 2018, and that he directed Davalos to not reappoint Plaintiff in June 2018, Plaintiff alleges a temporal gap of somewhere between one and three months. (*See* Am. Compl., ECF No. 42, ¶¶ 94–95, 109–10.) At this preliminary stage of the proceedings, the Court finds this gap to be close enough in time to withstand Defendants' motion. *See Ahmad*, 2020 WL 5720753, at *11 (finding an eight-month gap between the "employer's knowledge of the pending lawsuit" and plaintiff's termination to be sufficient at motion to dismiss stage).

Therefore, the Court respectfully recommends denying Defendants' motion as to Plaintiff's § 1983 retaliation claim against Boudreau and Davalos in their individual capacities, as pled in count three.

### D. Plaintiff's Corresponding NYSHRL and NYCHRL Claims

Plaintiff's causes of action under the NYSHRL and the NYCHRL parallel Plaintiff's § 1983 equal protection claims in that Plaintiff alleges Defendants subjected him to age-based disparate treatment, retaliation, and a hostile work environment based on the same alleged facts. (Am. Compl., ECF No. 42, ¶¶ 161–68.)[20] Because the relevant standards for liability under § 1983 and the NYSHRL are the same for purposes other than Plaintiff's age discrimination allegations, the Court analyzes Plaintiff's NYSHRL claims only to the extent they materially diverge from the Court's discussion above. *See Hamilton v. City of New York*, 563 F. Supp. 3d 42, 52 (E.D.N.Y. 2021); *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 233 n.32 (E.D.N.Y. 2014); *Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 451 (E.D.N.Y. 2011). However, because courts must analyze NYCHRL claims "separately and independently from any federal and state law claims," the Court will address Plaintiff's NYCHRL claims individually. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013); *see also Sutter*, 2021 WL 930459, at *30.

---

[20] Defendants argue that they cannot be held liable under the NYSHRL or the NYCHRL absent predicate employer liability on the part of their institution, and that Defendants are immune from Plaintiff's NYCHRL cause of action because Plaintiff complains only of actions Defendants took in their official capacities. (*See* Defs.' Mem., ECF No. 56, at 10–11, 23–24; Defs.' Reply, ECF No. 59, at 10–11.) However, recent decisions in this circuit have held that an individual defendant "may be held liable as an aider and abettor even if not as an 'employer,'" and "may still be held individually liable for actions [they] can only perform as a state official, because the logic of [the] sovereign immunity doctrine — which is meant to protect the state's fisc — does not extend to judgments against its employees." *Huffman v. Brooklyn Coll.*, No. 20-CV-6156 (NGG) (TAM), 2022 WL 43766, at *2 (E.D.N.Y. Jan. 5, 2022); *see also Bonaffini v. City Univ. of New York*, No. 20-CV-5118 (BMC), 2021 WL 2895688, at *2 (E.D.N.Y. July 9, 2021); *Sutter*, 2021 WL 930459, at *24; *Gittens-Bridges*, 2020 WL 3100213, at *21. Therefore, the Court does not recommend dismissing Plaintiff's NYSHRL or NYCHRL counts on this basis.

1. Age Discrimination

    a. *NYSHRL*

An age discrimination claim under the NYSHRL "requires that the plaintiff plausibly allege that 'an employer took adverse action "because of" age [and] that age was the "reason" that the employer decided to act.'" *Huffman v. Brooklyn Coll.*, No. 20-CV-6156 (NGG) (TAM), 2022 WL 43766, at *5 (E.D.N.Y. Jan. 5, 2022) (quoting *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 303 (2d Cir. 2021)); *see also Bonaffini v. City Univ. of New York*, No. 20-CV-5118 (BMC), 2021 WL 2895688, at *4 (E.D.N.Y. July 9, 2021). Therefore, "in the NYSHRL context, a plaintiff must plead 'facts which plausibly suggest that (1) the employer took an adverse action and (2) age was the "but for" cause of that adverse action.'" *Huffman*, 2022 WL 43766, at *5 (quoting *Boonmalert*, 721 F. App'x at 32).

Here, Davalos's alleged role in Plaintiff's non-reappointment for the fall 2018 term, in concert with Davalos's telling Plaintiff that he was "too old to teach," including on the day of the Executive Committee meeting, adequately states a claim of age discrimination under the NYSHRL. (*See* Am. Compl., ECF No. 42, ¶¶ 103, 112.) More specifically, "[t]hese allegations are sufficient to give plausible support to a minimal inference of discriminatory motivation, which is all that is required at this stage." *Szewczyk v. Saakian*, 774 F. App'x 37, 38 (2d Cir. 2019) (summary order) (internal quotation marks and citation omitted). Notwithstanding Defendants' arguments as to the weakness of Plaintiff's allegations, "they still meet the minimal threshold needed to survive a motion to dismiss, and [Davalos] had enough participation to qualify as an aider and abettor [under the NYSHRL]." *Bonaffini*, 2021 WL 2895688, at *4; *see also Trachtenberg v. Dep't of Educ. of City of New York*, 937 F. Supp. 2d 460, 471 (S.D.N.Y. 2013) (permitting plaintiff's age discrimination claims to survive despite being "thin on

specifics" and although defendants "may well be correct" that plaintiff "did not suffer discriminatory treatment").

As for Plaintiff's allegations of disparate treatment compared to his colleagues in the Department, or arising from the conduct of the other named Defendants, Plaintiff's allegations do not meet the minimal burden under the NYSHRL for reasons similar to those stated above in relation to Plaintiff's § 1983 claims. Namely, Plaintiff does not adequately allege that any Defendant other than Davalos acted with discriminatory intent or that he suffered an adverse employment action apart from his non-reappointment. *See Littlejohn*, 795 F.3d at 311 ("[A]bsent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent.").

Accordingly, the Court recommends denying Defendants' motion to dismiss count five only with respect to Plaintiff's NYSHRL disparate treatment claim against Davalos. *See Huffman*, 2022 WL 43766, at *3; *Bonaffini*, 2021 WL 2895688, at *4.

b. *NYCHRL*

"To state a claim for discrimination under the NYCHRL, a plaintiff need only show differential treatment of any degree based on a discriminatory motive." *Lebowitz v. New York City Dep't of Educ.*, 407 F. Supp. 3d 158, 173 (E.D.N.Y. 2017); *see also Gorokhovsky v. New York City Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014) (summary order). The NYCHRL does not require "a materially adverse employment action, nor severe and pervasive conduct . . . . However, even under this more liberal pleading standard, a plaintiff must still plausibly allege that he or she was subjected to unequal treatment because of a protected characteristic." *Id.* at 173–74. Given the NYCHRL's

more liberal standard, the Court also recommends finding that Plaintiff has stated a claim against Davalos under the NYCHRL, based on Davalos's age-based comments and alleged role in Plaintiff's non-reappointment.

### 2. Hostile Work Environment Under the NYCHRL[21]

Under the NYCHRL, plaintiffs "need not establish severe and pervasive conduct to establish liability, so long as the behavior complained of is worse than petty slights and trivial inconveniences." *Adams v. City of New York*, 837 F. Supp. 2d 108, 128 (E.D.N.Y. 2011) (quotation marks omitted); *see also Awad v. City of New York*, No. 13-CV-5753 (BMC), 2014 WL 1814114, at *7 (E.D.N.Y. May 7, 2014). The NYCHRL does require, however, "that the plaintiff plead facts tending to show that actions that created the hostile work environment were taken against him because of a prohibited factor," in this case, age. *Williams v. Metro-N. Commuter R. Co.*, No. 11-CV-7835 (CM), 2012 WL 2367049, at *13 (S.D.N.Y. June 20, 2012) ("The broader remediation available under the City law does not allow the Plaintiff to dispense with linking his claim of hostility to some attitude that the law forbids."); *see also Sutter*, 2021 WL 930459, at *30–31; *Lebowitz*, 407 F. Supp. 3d at 182.

Here, even without the severe or pervasive requirement, Plaintiff's claims against Davalos and Wittig still fail because Plaintiff does not allege that Wittig harassed him, or that Davalos assigned him more work and excluded him from departmental meetings, *because of* his age. (*See* Am. Compl., ECF No. 42, ¶¶ 47–63, 70–72, 80–83 (detailing Plaintiff's allegations as to his workload, exclusion from meetings, and

---

[21] The Court recommends granting Defendants' motion as to Plaintiff's hostile work environment claim under the NYSHRL for the same reasons as stated above in relation to Plaintiff's § 1983 hostile work environment claim; namely, that the events described were not sufficiently severe or pervasive, and not motivated by Plaintiff's age.

Wittig's behavior).) Indeed, Davalos's "too old to teach" comments came near the end of Plaintiff's employment, and after the complained-of actions that Plaintiff offers to illustrate alleged disparate treatment. That being said, Davalos's "too old to teach" comments are sufficient to establish a hostile work environment claim at the pleadings stage under the NYCHRL's more relaxed standards. *See Gorokhovsky*, 552 F. App'x at 102 ("In a hostile work environment claim under the NYCHRL, even a single comment may be actionable in appropriate circumstances." (quotation marks omitted)); *see also Modica v. New York City Dep't of Educ.*, No. 20-CV-4834 (JMF), 2021 WL 3408587, at *7 (S.D.N.Y. Aug. 4, 2021); *Green v. Jacob & Co. Watches, Inc.*, 248 F. Supp. 3d 458, 471 (S.D.N.Y. 2017).

Accordingly, the Court recommends denying Defendants' motion as to Plaintiff's NYCHRL hostile work environment claim against Davalos for his age-based comments.

3. Retaliation Under the NYCHRL[22]

"[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (internal citations omitted); *see also Smith v. City of New York*, 385 F. Supp. 3d 323, 345–46 (S.D.N.Y. 2019) ("The elements of a prima facie case of retaliation under Title VII, the NYSHRL, and the NYCHRL are 'identical,' except that the NYCHRL employs a broader standard of an 'adverse

---

[22] The Court recommends denying Defendants' motion as to Plaintiff's NYSHRL retaliation claim with respect to Boudreau and Davalos for the same reasons discussed above in relation to Plaintiff's § 1983 retaliation claim. *See, e.g., Boonmalert, v. City of New York*, 721 F. App'x 29, 33 (2d Cir. 2018) (summary order) (merging § 1983 and NYSHRL retaliation analysis); *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 216–17 (E.D.N.Y. 2014) (same); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 576 (S.D.N.Y. 2011) ("[R]etaliation claims under the NYSHRL are treated the same as retaliation claims under Section 1983[.]").

employment action' than its federal and state counterparts." (quoting *Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 70 (S.D.N.Y. 2016))).

Because the NYCHRL inquiry is broader, and in light of the Court's analysis above with respect to Plaintiff's § 1983 retaliation claim, the Court recommends denying Defendants' motion here as to Boudreau and Davalos, for their alleged roles and comments in relation to Plaintiff's non-reappointment.

### E.  Plaintiff's Tortious Interference Claim

Plaintiff's final cause of action alleges a claim against Davalos and Boudreau for tortious interference with a prospective economic advantage. (Am. Compl., ECF No. 42, ¶¶ 169–76; *see also* Pl.'s Mem., ECF No. 57, at 28–29.) To plead such a claim, a plaintiff must allege: "(1) a business relationship with a third party; (2) the defendant's knowledge and intentional interference with that relationship; (3) that the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) injury to the business relationship." *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 520 (S.D.N.Y. 2017); *see also 16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015).

Assuming without deciding that Plaintiff had a business relationship with a third party (CUNY/City College), which Boudreau and Davalos knew about and interfered with, causing an injury to said business relationship, Plaintiff fails to adequately allege that they did so "solely out of malice, or used dishonest, unfair, or improper means." *Grayson*, 271 F. Supp. 3d at 520. "The New York Court of Appeals has explained that, 'as a general rule, a defendant's conduct must amount to a crime or an independent tort' in order to amount to tortious interference with a prospective economic advantage,'" and short of that, must amount to "wrongful means," including "'physical violence, fraud or misrepresentation, civil suits and criminal prosecutions.'" *Friedman v. Coldwater Creek, Inc.*, 321 F. App'x 58, 60 (2d Cir. 2009) (summary order) (quoting *Carvel Corp. v. Noonan*,

45

3 N.Y.3d 182, 190 (N.Y. 2004); *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183 (N.Y. 1980)); *see also 16 Casa Duse, LLC*, 791 F.3d at 262 ("[T]he 'wrongful means' element sets a high bar."); *Ortiz v. Todres & Co., LLP*, No. 15-CV-1506 (LGS), 2018 WL 1626140, at *2 (S.D.N.Y. Mar. 30, 2018). The standard for this element is higher here than in the context of tortious interference with contract claims, reflecting "the greater protection that is accorded an interest in an existing contract, in contrast with the less substantive, more speculative interest in a prospective relationship." *Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F. Supp. 3d 436, 452–53 (S.D.N.Y. 2014) (alterations and quotation marks omitted); *see also Silverman v. Attilio Giusti Leombruni S.P.A.*, No. 15-CV-2260 (PAC), 2018 WL 4335507, at *3 (S.D.N.Y. Sept. 11, 2018).

Here, Plaintiff fails to state a claim because he has not plausibly alleged an independent tort or criminal act, nor does he plausibly establish that Davalos or Boudreau acted solely out of malice or for other improper means. "Even if the Court inferred 'malice' from the discriminatory and retaliatory acts that [P]laintiff alleges [Defendants] committed during [Plaintiff's] tenure, such conduct is insufficient to establish 'independent tortious act[s]' under New York law to sustain a tortious interference claim brought by an employee against h[is] superior." *Emmons v. City Univ. of New York*, 715 F. Supp. 2d 394, 425 (E.D.N.Y. 2010) (citing *Baguer v. Spanish Broad. Sys., Inc.*, No. 04-CV-8393 (KMK), 2007 WL 2780390, at *4 (S.D.N.Y. Sept. 20, 2007)). Plaintiff's "alleged violations of federal, state, and city anti-discrimination laws are not torts under New York law." *Baguer*, 2007 WL 2780390, at *4. In addition, Plaintiff's allegations that Defendants' conduct "was outrageous and malicious, [and] was intended to injure [Plaintiff]" are made in connection with Plaintiff's other claims, and in any event, are wholly conclusory. (Am. Compl., ECF No. 42, ¶¶ 152, 164, 168.) *See also Friedman*, 321 F.

App'x at 60; *White v. Pawelsky*, No. 19-CV-5246 (GRB) (ST), 2021 WL 7908050, at \*6 (E.D.N.Y. Mar. 14, 2021); *Ace Arts, LLC*, 56 F. Supp. 3d at 453.

Therefore, the Court recommends granting Defendants' motion to dismiss Plaintiff's tortious interference claim as alleged in count seven.

### F.  Leave to Replead

Plaintiff requests leave to amend his pleading should the Court find "any deficiencies" in the amended complaint, which Defendants strongly oppose. (Pl.'s Mem., ECF No. 57, at 3; Defs.' Mem., ECF No. 56, at 33–34; Defs.' Reply, ECF No. 59, at 18.) Generally speaking, plaintiffs are granted leave to amend following a motion to dismiss. *See Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 226 (E.D.N.Y. 2014); *see also* Fed. R. Civ. P. 15(a)(2). However, the Court is mindful that Plaintiff has had several bites at the apple in this case, as Defendants point out. Accordingly, the Court does not recommend that Plaintiff should be granted leave to replead at this time. *See Lively v. WAFRA Inv. Advisory Grp., Inc.*, No. 19-CV-3257 (JPO), 2020 WL 4038350, at \*7 (S.D.N.Y. July 17, 2020), *aff'd on other grounds*, 6 F.4th 293 (2d Cir. 2021). To the extent Plaintiff seeks leave to replead in the future, he should be required to file an appropriate motion, specifying the nature of any proposed amendments and why leave to amend should be granted.

### CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Defendants' motion to dismiss (ECF No. 55) be granted in part and denied in part. Specifically, the undersigned recommends denying Defendants' motion as to (1) Plaintiff's § 1983 retaliation claim under the Equal Protection Clause against Boudreau in his official capacity, but only to the extent Plaintiff is seeking prospective relief; (2) Plaintiff's § 1983 retaliation claim under the Equal Protection Clause against Boudreau and

Davalos in their individual capacities, as well as the corresponding NYSHRL and NYCHRL retaliation claims alleging individual liability; (3) Plaintiff's NYSHRL and NYCHRL age-based disparate treatment claims against Davalos in his individual capacity; and (4) Plaintiff's NYCHRL hostile work environment claim against Davalos in his individual capacity. The Court recommends granting Defendants' motion to dismiss as to Plaintiff's remaining claims, and to the extent Plaintiff seeks money damages and retrospective relief against Boudreau in his official capacity.

*   *   *   *   *

Any objections to this report and recommendation must be filed within fourteen days. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

**SO ORDERED.**

Dated:  Brooklyn, New York
         August 5, 2022

_Taryn A. Merkl_
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE